UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA            :

   - v. -                           :   SEALED INDICTMENT

DONALD LAGUARDIA,                   :   19 Cr. ( ___ )

              Defendant.            :   **19 CRIM 893**

- - - - - - - - - - - - - - - - - - X

### COUNT ONE
### (Securities Fraud)

The Grand Jury charges:

**RELEVANT INDIVIDUALS AND ENTITIES**

1.   At all times relevant to this Indictment, DONALD LAGUARDIA, the defendant, was a founder and managing principal of L-R Managers, LLC, a/k/a "LR Managers," a/k/a "LR Global Partners," a/k/a "LR Global" ("L-R Managers" or the "Firm"), a Delaware limited liability corporation with its principal place of business in New York, New York.

2.   At all times relevant to this Indictment, LR Global Frontier Master Fund, Ltd. (the "Master Fund") was a fund entity incorporated in the Cayman Islands, with two feeder funds: an onshore feeder, the LR Global Frontier Fund, L.P. (the "Onshore Frontier Fund"), a Delaware limited partnership; and an offshore feeder fund, LR Global Frontier Fund, Ltd. (the "Offshore Frontier Fund"), an entity incorporated in the Cayman Islands

(collectively, the "Frontier Funds" or the "Funds"). The Frontier Funds were created in or about 2010 with a stated focus on investments in "frontier" markets in Latin America, Central and Eastern Europe, the Middle East, Africa, and Asia.

3. At all times relevant to this Indictment, L-R Managers was the investment adviser to the Frontier Funds. The Firm was not registered, and was not required to be registered, with the Securities and Exchange Commission. In addition to serving as a managing principal of L-R Managers, DONALD LAGUARDIA, the defendant, also served as a portfolio manager of the Frontier Funds.

4. Since in or about 2012, Investor-1 maintained an ownership interest in L-R Managers. Since at least in or about January 2013, Investor-1 was also an investor in the Offshore Frontier Fund. Investor-1 made this investment in the name of his company, Company-1.

5. Since in or about September 2015, Investor-2 was an investor in the Onshore Frontier Fund. Investor-2 made this investment jointly in his own name and in the name of Investor-2's spouse.

**THE SCHEME TO DEFRAUD**

6. From at least in or about 2013 through in or about

2017, DONALD LAGUARDIA, the defendant, engaged in a scheme to defraud investors in the Frontier Funds, including Investor-1 and Investor-2. Specifically, LAGUARDIA solicited investments in the Frontier Funds through material misrepresentations and omissions to investors and potential investors regarding, among other things, how investor funds would be used. In total, between in or about 2013 and in or about 2015, several investors invested a total of more than approximately $6 million in the Frontier Funds. Once LAGUARDIA obtained investor funds, he misappropriated a substantial portion of those funds, which he impermissibly borrowed or otherwise used to pay for personal and Firm expenses.

### False Representations to Investors

7. As part of his efforts to solicit investments in the Frontier Funds, DONALD LAGUARDIA, the defendant, caused Private Placement Memoranda for the Onshore and Offshore Frontier Funds ("PPMs") to be sent to potential investors. These PPMs purported to describe the Frontier Funds, the operations of the Funds, and terms of investing in the Funds, among other things.

8. The PPMs stated, among other things, that L-R Managers managed the investments of the Frontier Funds. The PPMs provided that LR Global General Partner, LLC, an affiliate of L-R Managers, received a performance fee, constituting an annual

incentive allocation equal to 20% of the net appreciation in the net asset value of certain series of shares in the Master Fund. Additionally, as compensation for managing the investments of the Frontier Funds, the PPMs stated that L-R Managers received a management fee equal to between 2% and 2.5% per year of the net asset value attributable to each Fund investor. The PPMs provided that, in consideration for these management fees, L-R Managers bore the costs of providing "office space and utilities; news, quotation and computer equipment; software; certain administrative services; and secretarial, clerical and other personnel" to the Funds. The PPMs further stated the L-R Managers also bore the costs for the Firm's own "overhead costs and expenses."

9. The PPMs did not authorize L-R Managers to withdraw investor money from the Frontier Funds, in the form of a loan or otherwise, to pay L-R Managers' expenses or the personal expenses of its principals.

### Misappropriation of Investors' Funds

10. Contrary to the representations made in the PPMs and in breach of duties owed to investors in the Funds, DONALD LAGUARDIA, the defendant, misappropriated investor funds and Frontier Fund assets.

11. For example, on or about January 9, 2013, Investor-

4

1 signed subscription documents for Company 1's purchase of approximately $800,000 worth of Class B shares in the Offshore Frontier Fund. On or about January 16, 2013, Investor-1's representative sent these documents to DONALD LAGUARDIA, the defendant.

12. On or about January 17, 2013, DONALD LAGUARDIA, the defendant, sent wire instructions for Investor-1 to send his investment to an account (the "LRMI Account") belonging to L-R Managers Investments, L.P. ("LRMI"), a limited partnership through which owners of L-R Managers, such as Investor-1, could invest in the Funds.

13. On or about January 22, 2013, in accordance with these instructions, Investor-1, through Company-1, transferred approximately $800,000 to the LRMI account. That same day, an employee of L-R Managers emailed DONALD LAGUARDIA, the defendant, and another employee, relaying that "[Investor-1]'s $$ just came in," and asking the other L-R Managers employee to "let me know when I can wire it to the Frontier [Fund]." LAGUARDIA responded, "Dont [sic] wire anything yet!"

14. In fact, a substantial portion of Investor-1's funds were never transmitted for investment into the Offshore Frontier Fund as Investor-1 intended. Instead, between January

5

and March 2013, DONALD LAGUARDIA, the defendant, caused approximately $390,000 of these funds to be transferred through a series of wires from the LRMI Account to a bank account belonging to L-R Managers (the "L-R Managers Account"). Investor-1's $390,000 was commingled with other money in the L-R Managers Account and spent, without Investor-1's authorization, on L-R Managers' payroll; rent for its New York office, payments on its business credit card; rent for an apartment used by its employees; restaurant bills; payments to its principals; and other miscellaneous Firm and personal expenditures. LAGUARDIA himself received approximately $52,000 of these funds.

15.  In addition to the diversion of investor money that was supposed to have been invested in the Frontier Funds, between approximately May 2013 and March 2017, DONALD LAGUARDIA, the defendant, caused the transfer of at least approximately $1 million from accounts belonging to the Frontier Funds to the L-R Managers Account for unauthorized purposes, including approximately $433,000 for the Firm's payroll; approximately $52,500 for rent for the Firm's New York office; approximately $21,000 for rent for an apartment used for business purposes; approximately $135,000 for payments on the Firm's business credit card; and approximately $139,000 for payments directly to, or on

behalf of, LAGUARDIA.

16. Some such transfers were internally recorded as receivables due to the Frontier Funds from L-R Managers, but they were not disclosed to investors in the Funds. On or about March 2, 2015, L-R Managers repaid approximately $400,000 to the Frontier Funds. However, DONALD LAGUARDIA, the defendant, subsequently directed more than approximately $500,000 of additional unauthorized and undisclosed transfers of money from the Frontier Funds to the L-R Managers Account, some of which came from money invested by Investor-2, as detailed below.

17. Additionally, on or about November 5, 2014, DONALD LAGUARDIA, the defendant, caused the transfer of approximately $201,500 out of a Frontier Fund account to repay a debt of L-R Managers. This transaction was recorded as a loan to L-R Managers, but was not disclosed to investors in the Funds and was never repaid.

18. By at least in or about September 2015, L-R Managers faced substantial financial difficulties. On or about September 1, 2015, another managing principal at L-R Managers ("Principal-1") emailed DONALD LAGUARDIA, the defendant, and others about L-R Managers' financial situation. Principal-1's email noted the "the precarious financial condition" at the

Firm. Principal-1 further stated that they had been "running on short term (now monthly) financial funding for the past year," had accumulated liabilities to numerous vendors, and had been unable to meet payroll since July. Prinicpal-1 noted: "Now that LR is out of money, burdened with debt, and no prospect of immediate funding, I find it morally unacceptable to continue convincing [employees] to stay . . . . Equally, I also find ethically troubling to accept money into the fund when we can no longer support our payroll and mission critical services such as Bloomberg."

19.  Approximately a few days later, on or about September 4, 2015, the Onshore Frontier Fund received a $2 million investment from Investor-2, a new investor, for Class A interests. Investor-2 wired his investment in accordance with the instructions contained in subscription documents that Investor-2 received from DONALD LAGUARDIA, the defendant. Prior to this investment, LAGUARDIA told Investor-2 that L-R Managers would bear the start-up costs of the Frontier Funds until the Frontier Funds had sufficient assets under management, so that Investor-2 would not be disadvantaged by having to pay those costs. This was misleading, among other reasons, because LAGUARDIA did not disclose that the Frontier Funds were, in

8

fact, directly paying those costs. LAGUARDIA also did not disclose to Investor-2 that, in addition to paying Fund expenses, the Frontier Funds were paying substantial expenses for L-R Managers and LAGUARDIA, or that the Firm was nearly insolvent.

20. From in or about October 2015 through in or about February 2016, DONALD LAGUARDIA, the defendant, misappropriated at least approximately $275,000 of Investor-2's money and used it, among other things, to pay the salaries of other L-R Managers employees, to pay for charges on the Firm's business credit card, and to make payments to himself.

21. On or about June 15, 2017, Investor-2 sent a redemption request to DONALD LAGUARDIA, the defendant, asking for the return of his money. To date, Investor-2 has not received any of his $2 million investment back.

**Statutory Allegations**

22. From at least in or about 2013 through in or about 2017, in the Southern District of New York and elsewhere, DONALD LAGUARDIA, the defendant, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails, and of the facilities of national securities exchanges, used and employed, in connection with the

purchase and sale of securities, manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, to wit, LAGUARDIA solicited investments, in the form of limited partnership interests and shares, in the Frontier Funds through fraudulent misrepresentations and omissions and, after obtaining investor funds, misappropriated those funds for unauthorized uses, including for his personal benefit.

(Title 15, United States Code, Sections 78j(b) & 78ff;
Title 17, Code of Federal Regulations, Section 240.10b-5;
and Title 18, United States Code, Section 2.)

### COUNT TWO
### (Investment Adviser Fraud)

The Grand Jury further charges:

23. The allegations set forth in paragraphs 1 through 21 of this Indictment are repeated, realleged, and incorporated by reference as if fully set forth herein.

24. From at least in or about 2013 through in or about

2017, in the Southern District of New York and elsewhere, DONALD LAGUARDIA, the defendant, willfully and knowingly, did cause L-R Managers, LLC, an investment adviser, by use of the mails and of other means and instrumentalities of interstate commerce, directly and indirectly, to: (a) employ devices, schemes, and artifices to defraud clients and prospective clients; (b) engage in transactions, practices, and courses of business which operated as a fraud or deceit upon clients and prospective clients; and (c) engage in acts, practices, and courses of business which were fraudulent, deceptive, or manipulative, to wit, LAGUARDIA, acting through L-R Managers, LLC, solicited investments in the Frontier Funds through fraudulent misrepresentations and omissions and, after obtaining investor funds, misappropriated those funds for unauthorized uses, including his personal benefit.

(Title 15, United States Code, Sections 80b-6 and 80b-17; Title 18, United States Code, Section 2.)

## COUNT THREE
### (Wire Fraud)

The Grand Jury further charges:

25. The allegations set forth in paragraphs 1 through 21 of this Indictment are repeated, realleged, and incorporated by reference as if fully set forth herein.

26. From at least in or about 2013 through in or about

11

2017, in the Southern District of New York and elsewhere, DONALD LAGUARDIA, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, LAGUARDIA solicited investments in the Frontier Funds through fraudulent misrepresentations and omissions and, after obtaining investor funds, misappropriated those funds for unauthorized uses, including his personal benefit, and used emails, interstate telephone calls, and interstate transfers of funds in furtherance of his scheme.

(Title 18, United States Code, Sections 1343 & 2.)

**FORFEITURE ALLEGATIONS**

27. As a result of committing one or more of the offenses alleged in Counts One through Three of this Indictment, DONALD LAGUARDIA, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28 United States Code, Section 2461(c), any

and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses.

### Substitute Asset Provision

28. If any of the above described forfeitable property, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981,
Title 21, United States Code, Section 853(p), and
Title 28, United States Code, Section 2461(c).)

FOREPERSON

GEOFFREY S. BERMAN
United States Attorney

13

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA**

- v. -

**DONALD LAGUARDIA,**

Defendant.

**SEALED INDICTMENT**

19 Cr. \_\_\_ (\_\_\_)

(Title 15, United States Code, Sections 78j(b), 78ff, 80b-6, and 80b-17; Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Sections 1343 & 2)

GEOFFREY S. BERMAN
United States Attorney.

**A TRUE BILL**

Foreperson.

12/13/2019

12/13/2d19
N.E.

Indictment returned
Arrest warrants ordered +
filed under seal

Sarah Carle
USMS

14